IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**RONNIE BURTON**                                                                                    **PLAINTIFF**

**V.**                                                           **CAUSE NO. 3:11-CV-00646-CWR-FKB**

**SHERIFF MALCOLM MCMILLIN,
DEPUTY KEITH BURNETT, DEPUTY
MARQUETTE FUNCHESS, SHAWONDA
OWENS, M.O., AND JOYCE SIMON, M.O.,**                                **DEFENDANTS**
**IN THEIR INDIVIDUAL AND OFFICIAL
CAPACITIES, AND MIKIMBE HARRIS,
M.O., IN HER OFFICIAL CAPACITY**

**ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR SUMMARY JUDGMENT PREMISED ON QUALIFIED IMMUNITY**

The above-styled matter is before the Court on the motion for summary judgment[1] of Sheriff Malcolm McMillin, Shawonda Owens, M.O., and Joyce Simon, M.O., in their individual capacities.[2] The Court has considered the arguments contained therein, as well as those presented by the plaintiff in opposition thereto, and after due consideration has concluded that the motion should be granted in part and denied in part.

**FACTS**

---

[1] Motion for Summary Judgment Premised on Qualified Immunity [Docket No. 6] (hereinafter "Motion").

[2] When the defendants filed the motion for summary judgment, Mikimbe Harris, M.O., in her individual capacity, counted herself among the movants. Motion at 1. However, since that time, the claims against Harris in her individual capacity have been dismissed. *See* Agreed Order [Docket No. 25]. For that reason, the styling of the case reflects the fact that Harris remains a party to the case in her official capacity only, and this Order does not affect her.

Ronnie Burton is an officer in the United States Army Reserve.[3] Late in the evening of September 12, 2008, Burton was standing in front of a house near the corner of Flag Chapel and Lyndon B. Johnson in Jackson, Mississippi. When Burton saw a truck approaching him at a high rate of speed, he assumed that he was the target of a drive-by shooting, and indeed, he was fired upon and was shot.[4] According to Burton, the bullet "went in and out."[5] Burton later learned that the occupants in the vehicle were law enforcement officers, and they fired the shots that injured him.[6] Burton was taken by ambulance to University Medical Center,[7] where he was treated. While at UMC, Burton was prescribed Percocet for pain[8] and was told to "[t]ake one or two every six hours if needed."[9]

After his release from UMC on September 13, 2008, he was taken to the Hinds County Detention Facility in Raymond, Mississippi, and was booked at 5:10 p.m.[10] At the time of his booking, he gave his prescription to detention center personnel and was told that "they couldn't

---

[3] Exhibit H to Motion for Summary Judgment Premised on Qualified Immunity (hereinafter "Burton Deposition") [Docket No. 6-8] at 4.

[4] State Court Record [Docket No. 1-1] at 6.

[5] Burton Deposition at 6.

[6] State Court Record at 6.

[7] Burton Deposition at 4.

[8] *See* Burton Deposition at 23-24.

[9] Burton Deposition at 24.

[10] Burton Deposition at 5.

fill the actual prescription, but they'd give me some medicine in place of it."[11] Ultimately, he was released from the detention facility on September 15, 2008, at approximately 8 p.m.[12] During his time at the detention facility, Burton claims that he was treated by a nurse on the afternoon of September 14, 2008, and on September 15, 2008, and on both occasions he received 800 milligrams of ibuprofen rather than Percocet.[13] Although he suffered no further physical injuries, such as an infection,[14] Burton alleges that he suffered from pain during the time he was denied his prescribed medication.[15] According to Burton, "I was in pain until I got the medicine. I asked for the medicine over and over."[16]

On September 9, 2011, Burton filed suit in Hinds County Circuit Court against Sheriff Malcolm McMillin, two deputies, and three medical officers, all in their individual and official capacities.[17] Specifically, Burton's Complaint invokes Title 42, Section 1983 of the United States Code to allege "that the Defendants intentionally, recklessly, and with a reckless disregard for

---

[11] Burton Deposition at 10. Under deposition, Sheriff Malcolm McMillin testified that the detention center operates under a policy not to honor prescriptions written by any "physician . . . [that] did not have privileges to practice at the Raymond Detention Center." Reply to Plaintiff's Response to Motion for Summary Judgment Premised on Qualified Immunity [Docket No. 11] (hereinafter "Defendants' Reply Brief") at 3.§

[12] Burton Deposition at 5-6. Defense counsel's records purport to show that Burton was released at 4:28 p.m. on the afternoon of September 15, 2008, but Burton disputes that.

[13] Burton Deposition at 6. Defense counsel contends that Burton was treated at least two other times by the nursing staff; Burton claims that records of such treatments have been fabricated.

[14] Burton Deposition at 10.

[15] Burton Deposition at 26.

[16] Burton Deposition at 10.

[17] State Court Record at 4.

Plaintiff's rights took actions to deprive the Plaintiff of his due process rights under federal laws, equal protection rights under federal laws, and violated other of Plaintiff's civil rights under federal laws."[18] The Complaint does not indicate what "other . . . civil rights" stand violated.

The matter was removed to federal court on October 17, 2011.[19] On October 19, 2011, McMillin and the three medical officers – Mikimbe Harris, Shawanda Owens, and Joyce Simon – moved for summary judgment in their individual capacities based on the doctrine of qualified immunity.[20] The October 19 motion does not concern the parties in their official capacities, nor does it address the two deputies.

## STANDARD OF REVIEW

Although motions for summary judgment are filed frequently, not every case is suitable for that disposition. Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21] Once the movant shows the court that it is entitled to judgment as a matter of law, the burden shifts to the resisting party to show why summary judgment is not proper.[22] The non-movant must point to and set forth specific facts as to the existence of a genuine issue of material

---

[18] State Court Record at 8.

[19] Notice of Removal [Docket No. 1]. The defendants invoked the district court's jurisdiction over the federal question presented by Burton's claims. *See* 28 U.S.C. § 1331.

[20] Harris, in her individual capacity, is no longer a party to this suit. *See supra* at n.2.§

[21] Fed. R. Civ. P. 56(a).

[22] *Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

fact requiring a trial.[23] "'Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.'"[24] An issue is genuine "if the evidence supporting its resolution in favor of the party opposing summary judgement, together with an inference in such party's favor that the evidence allows would be sufficient to support a verdict in favor of the party."[25] A fact is material if it is one which might affect the outcome of the suit under the governing law.[26] Factual disputes that are irrelevant or unnecessary will not be considered.[27]

The court has no duty whatsoever to sift through the record in search of evidence to support a party's opposition to summary judgment.[28] Additionally, "[t]he court resolves factual controversies for purposes of summary judgment in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[29] Where there is no proof of contradictory facts, the court will not assume that the

---

[23] *Walker v. J.E. Merit Constructors, Inc.*, 707 F. Supp. 254, 257 (S.D. Miss. 1988).

[24] *Davis v. Louisville Mun. Sch. Dist.*, 2010 WL 290956, *2 (N.D. Miss. 2010) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

[25] *Zisman v. Mason*, 2008 WL 879726, *3 (S.D. Miss. 2008) (citing *Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987)

[26] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[27] *Id*.

[28] *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006). *See also Fuentes v. Postmaster Gen. of U.S. Postal Serv.*, 282 F. App'x 296, 300 (5th Cir. 2008) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (not only must the non-movant point to specific facts, she must articulate the precise manner in which that evidence support her claim).

[29] *Zisman,* 2008 WL 879726 at *3 (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

nonmoving party could or would prove the necessary facts.[30]

The responsibility to assess the probative value of the evidence rests ultimately with the jury. As a consequence, a court must step back and refrain from making credibility determinations, and it must not weigh evidence or draw from the facts legitimate inferences for the movant.[31] This Court is ever mindful that although a useful device, summary judgment "must be employed cautiously because it is a final adjudication on the merits."[32]

## ANALYSIS

**Qualified Immunity in General.** Civil actions instituted pursuant to Section 1983 are subject to common-law immunities that existed when Congress passed the Civil Rights Act of 1871.[33] One such defense is qualified immunity, which stands for the proposition that a government official "is not charged with predicting the future course of constitutional law."[34] Therefore, "[g]overnment official performing discretionary functions are entitled to qualified immunity from suit unless their conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known."[35]

Qualified immunity "provides ample protection to all but the plainly incompetent or those

---

[30] *Id.* (citing *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1048 (5th Cir. 1996).

[31] *Strong v. Dep't of Army*, 414 F. Supp. 2d 625, 628 (S.D. Miss. 2005).

[32] *Jackson v. Cain*, 865 F.2d 1235, 1241 (5th Cir. 1989).

[33] *Cousin v. Small*, 325 F.3d 627, 631 (5th Cir. 2003).

[34] *Pierson v. Ray*, 386 U.S. 547, 557 (1967).

[35] *Gunaca v. State of Texas*, 65 F.3d 467, 473 (5th Cir. 1995).

who knowingly violate the law."[36] However, if the defense is raised at the summary-judgment phase and a genuine issue of material fact exists on a question material to qualified immunity's application, then the plaintiff should be allowed to proceed with his claims.[37]

**McMillin's Invocation of Qualified Immunity.** As to McMillin, the issue of qualified immunity is easily addressed. Burton's memorandum in opposition to the motion for summary judgment does not defend his claim against McMillin in McMillin's individual capacity; instead, it focuses solely on the official-capacity claim.[38] But the defendants reiterate that the motion concerns only the claims leveled against McMillin in his individual capacity,[39] and indeed, qualified immunity – the only subject discussed in the defendants' motion – is inapplicable to official-capacity claims brought under Section 1983.[40]

Therefore, to the extent that the motion seeks summary judgment on behalf of McMillin in his individual capacity, the motion is granted in part.

**The Medical Officers' Invocation of Qualified Immunity.** In his response[41] to the motion for summary judgment, Burton does not argue that defendants Shawonda Owens and

---

[36] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

[37] *Enlow v. Tishomingo Cnty., Miss.*, 962 F.2d 501, 509 (5th Cir. 1992).

[38] Plaintiff's Memorandum of Authorities in Opposition to Defendants' Motion for Summary Judgment Premised on Qualified Immunity [Docket No. 10] (hereinafter "Plaintiff's Brief") at 4-7.

[39] Defendants' Reply Brief at 1.

[40] *Hafer v. Melo*, 502 U.S. 21, 26 (1991) ("[O]fficials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law.").

[41] Plaintiff's Brief at 7-11.

Joyce Simon (hereinafter "the medical officers") violated his rights established by the Equal Protection Clause or "other . . . civil rights."[42] Instead, Burton frames his claim purely as one of deliberate indifference.[43] Therefore, to the extent that the motion for summary judgment attacks Burton's claim under the Equal Protection Clause and any other statutory or constitutional source of civil rights, the motion is granted in part.

As to the claim of deliberate indifference, although Burton frames his case as one implicating the Eighth Amendment's prohibition against cruel and unusual punishment,[44] that provision chiefly protects those who have been convicted of crimes; on the other hand, pretrial detainees are protected from deliberate indifference by the Due Process Clause of the Fourteenth Amendment.[45] Broadly speaking, this is not a distinction without a difference: while the Eighth Amendment does not forbid all punishments but only those that are cruel and unusual, due process precludes a State from punishing a pretrial detainee *at all*.[46]

However, in the context of medical care, "the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care . . . during their confinement[.]"[47] Additionally, "a state jail official's liability for episodic acts or omissions cannot attach unless

---

[42] *See* State Court Record at 8.

[43] Plaintiff's Brief at 7-11.

[44] Plaintiff's Response at 7.

[45] *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996).

[46] *Id.*

[47] *Id.* at 650.

the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk."[48]

"To find that an official is deliberately indifferent, it must be proven that 'the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"[49] In other words, "the plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[50] Moreover, the deliberate indifference must "result[ ] in substantial harm"[51] in order to amount to a constitutional violation.

The medical officers' first argument is that Burton did not suffer from any "serious medical need."[52] In their view, Burton was in stable condition when he arrived at the jail[53] and, by his own admission, suffered no additional injury as a result of the medical officers' actions or inactions.[54] Essentially, the medical officers' position is that Burton's pain was not a "serious medical need."

---

[48] *Id.*

[49] *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

[50] *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

[51] *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).

[52] Defendants' Reply Brief at 2.

[53] Defendants' Reply Brief at 2.

[54] Defendants' Reply Brief at 3

The Court rejects that argument. When addressing Eighth Amendment claims of deliberate indifference, the Fifth Circuit frequently recites the proposition that "[p]rison officials violate the Eighth Amendment when they demonstrate deliberate indifference to a prisoner's serious medical needs constituting an unnecessary and wanton infliction of pain."[55] Deliberate indifference and the unnecessary, wanton infliction of pain go hand in hand, and even when no physical manifestation makes itself known, pain can be a "serious medical need." No matter how dismissively the defendants treat Burton's injury, it is not disputed that he sustained a gunshot wound from a law enforcement officer and that wound required attention from medical providers in the UMC emergency room.

The medical officers also seek refuge behind the detention center's policy of filling detainees' prescriptions only when issued by physicians approved by the facility.[56] The Court likewise rejects this argument. In a 1981 decision, the Eighth Circuit held that although qualified immunity might save officials who were following orders, "if they knew or should have known that their [failure to act was] violating the plaintiff's constitutional rights, . . . they may not hide behind the cloak of institutional loyalty."[57] An *en banc* sitting of the Fifth Circuit has endorsed that view.[58] Another circuit has posited that prison officials cannot "substitute their judgments for

---

[55] *Brewster v. Dretke*, 587 F.3d 764, 769 (5th Cir. 2009) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

[56] Defendants' Reply Brief at 3.

[57] *Villanueva v. George*, 659 F.2d 851, 855 (8th Cir. 1981) (en banc).

[58] *Hare*, 36 F.3d at 416 n.19.

a medical professional's prescription,"[59] and this Court agrees.[60] Unconstitutional actions and inactions cannot be forgiven simply because the violators were "told to do it."

Also, the medical officers claim that Burton "never complained" of pain and that, if he had complained, he would have been offered more painkillers.[61] Burton contends that he did but to no avail.[62] Such a dispute regarding a material fact cannot give rise to summary judgment.

Finally, the medical officers contend that, at worst, their decisions regarding Burton's medication was incorrect or negligent but that such a conclusion would not amount to a finding of deliberate indifference. Although the medical officers are correct that negligence and deliberate indifference are distinct concepts,[63] the judgment inherent to the practice of medicine does not satisfy the ban on deliberate indifference when "prison officials refused to treat [a detainee], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[64] In the

---

[59] *Zentmyer v. Kendall Cnty., Ill.*, 220 F.3d 805, 812 (7th Cir. 2000). *See also Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999) (Posner, J.) ("Ralston was not seeking an expensive or unconventional treatment; he just wanted the pain medicine that the prison doctor had prescribed for him. The prison guard's deliberate refusal of it was a gratuitous cruelty, and not a trivial one, even if the context of cancer is ignored.").

[60] This point cannot be made more clear as Simon is a certified phlebotomist who did not graduate from high school but received her GED. *See* Exhibit F [Docket No. 6-6] at 6. Harris' medical credentials are also limited. She, however, did graduate from high school and attended some EMT training at Holmes Community College. [Docket No. 6-7] at 5-6.

[61] Defendants' Reply Brief at 3.

[62] *Supra* at n.16.

[63] *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012).

[64] *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quotations omitted).

case at hand, Burton has testified that his jailers did all of these things. Therefore, the Court rejects the medical officers' final argument as well.

## CONCLUSION

The evidentiary burdens facing a plaintiff in a deliberate-indifference case are exceedingly high, but the arguments offered by the medical officers do not counsel a ruling in their favor when all evidence is viewed in the light most favorable to Burton's case. The pain from which he claims to have suffered was a "serious medical need." The detention center's policy of offering Ibuprofen in place of any prescription written by an unapproved physician does not excuse otherwise unconstitutional behavior. And if Burton's testimony is to be believed, then the medical officers' inaction rose far above mere negligence when they "refused to treat [Burton], ignored his complaints, [and] intentionally treated him incorrectly . . . ."[65] The course of conduct is one that violates a clearly established constitutional right of which a reasonable person would be aware. Therefore, to the extent that the motion for summary judgment seeks dismissal of the due process claims against the medical officers in their individual capacities, the motion is denied in part.

In all other regards, the motion is granted in part. Within 10 days of this Order's entry, the parties shall consult with the magistrate judge regarding a case management order.

SO ORDERED this Nineteenth day of April 2012.

/s/ *Carlton W. Reeves*
Hon. Carlton W. Reeves
United States District Court Judge

---

[65] *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quotations omitted).